## IN THE COURT OF APPEALS OF IOWA
No. 17-0900
Filed August 2, 2017

**IN THE INTEREST OF Z.Y., G.Y., K.Y., and G.Y.,**
**Minor Children,**

**H.Y., Mother,**
    Appellant,

**G.Y., Father of G.Y., K.Y., and G.Y,**
    Appellant**,**

**S.Y, Father of Z.Y.,**
    Appellant.

_____

Appeal from the Iowa District Court for Scott County, Nancy S. Tabor, Judge.

Parents appeal the termination of their parental rights. **AFFIRMED ON ALL APPEALS.**

Patrick J. Kelly, Bettendorf, for appellant mother.

Michael A. Woods of Zamora, Taylor, Woods & Frederick, Davenport, for appellant father G.Y.

Barbara E. Maness, Davenport, for appellant father S.Y.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Neill A. Kroeger, LeClaire, guardian ad litem for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Bower, JJ. Tabor, J., takes no part.

**DOYLE, Judge.**

H.Y. is the mother of four children; her eldest was born in 2009 and her youngest in 2015. S.Y. is the father of the oldest child, and G.Y. is the father of the three younger children. In May 2017, the juvenile court terminated the parents' parental rights to their children,[1] finding grounds for termination under several paragraphs of Iowa Code section 232.116(1) (2017), including paragraph (f) as to the children aged four and older, and paragraph (h) as to the child under four.

Each parent appeals the court's order. The mother challenges the grounds for termination found by the court and the court's determination that termination of parental rights was in the children's best interests, arguing she should have been given additional time for reunification. G.Y. similarly challenges the court's grounds-for-termination and best-interests findings, but he also claims he was not provided reasonable reunification services. S.Y. likewise maintains he was not provided reasonable services for reunification and argues termination of his parental rights was not in his child's best interests, but he only challenges an element of one of the four grounds for termination found by the juvenile court.

Parental rights may be terminated under Iowa Code chapter 232 if the following three conditions are true: (1) a "ground for termination under section 232.116(1) has been established" by clear and convincing evidence, (2) "the best-interest framework as laid out in section 232.116(2) supports the termination

---

[1] Though we recognize S.Y. only has the one child, we use the plural "children" for ease of reference unless otherwise stated.

of parental rights," and (3) none of the "exceptions in section 232.116(3) apply to preclude termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219-20 (Iowa 2016). However, prior to termination of a parent's parental rights, the State must make reasonable efforts "to make it possible for the child to safely return to the family's home." Iowa Code § 232.102(6)(b); *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). Our review is de novo, and, where the juvenile court had found several statutory grounds for termination, "we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

**Grounds for Termination and Reasonable Efforts.** Each parent argues the State failed to prove the children could not be returned to that parent's care at the time of the termination-of-parental-rights hearing, an element the State must prove in paragraphs (f) and (h) of section 232.116(1) to support termination under those grounds. Additionally, S.Y. and G.Y. each argue he should have been permitted to have a trial placement of the children in his home as part of providing him reasonable services. Upon our de novo review of the record, we find that reasonable efforts were provided to each parent by the State and the Iowa Department of Human Services (Department) for reunification with their children, but the same concerns that led to the children's removal continued to exist years later, making the provision of a trial placement inappropriate.

Although the children came to the Department's attention due to deplorable housing conditions, "over time, what became overwhelming[ly] clear was that the children's needs were not being met." The social work case

manager testified the Department had not transitioned to any unsupervised

visitation because the parents, the manager believed, were

> incapable of . . . providing safety care for their children. [The youngest child] is the only one that does not have special needs, . . . all three other children have special needs, which include behavioral, as well as some mental health and/or developmental things. They require a lot, and the parents struggle with following through on a consistent basis on meeting their own needs and have demonstrated that would not be different if the kids were back in their care, and they continue to struggle with supervision as well.

Two of the children

> were not consistently getting to the therapies they needed, the children's health needs were not being met; including concerns regarding [two of the children's] nutritional health. The children . . . did not have appropriate rules and expectations within the home, nor were the children being appropriately supervised. The parents (including [S.Y.]) had a volatile relationship, often verbally abusive. Despite many efforts over the years and various techniques to teach the family the skills needed, the parents have not been able or willing to make the necessary changes.
>
> [The mother] desperately wants to effectively parent her children. However, she seems incapable.
>
> [G.Y. and S.Y.] do not seem to have the desire to do anything differently. As a result, they too have not demonstrated the ability (or willingness) to safely parent their children.

We agree with the juvenile court's assessment that after

> providing services to this family group for over three years[, n]one of the parents have been able to sustain appropriate and safe parenting to these children for extended periods of time. The period that the children were returned to [the mother and G.Y.'s] care was evidenced by a steady decline in the safety of the children resulting in their removal again within a year's time. [S.Y.'s] parenting of [his child] on his own lasted only two months.
>
> . . . .
>
> . . . These parents all mean well, but are mentally and emotionally unable to provide that sustainable care to these especially needy children who have emotional, mental, physical and educational needs that exceed the norm and are challenging. The three year history of this case reveals that. Visitation has not

yet progressed to unsupervised contact with the parents and relatives. There are still serious safety concerns in each home.

We conclude the State proved, by clear and convincing evidence, that the children could not be returned to the parents' care at the time of the termination-of-parental-rights hearing despite the offer or receipt of substantial services. Consequently, we agree termination of the parents' parental rights was proper under paragraphs (f) and (h).

**Best Interests and Additional Time.** Each parent argues termination of his or her parental rights was not in the children's best interests, and the mother argues she should have been given additional time for reunification. When considering whether termination of parental rights is in the children's best interests, "we 'shall give primary consideration to the [children's] safety, to the best placement for furthering the long-term nurturing and growth of the [children], and to the physical, mental, and emotional condition and needs of the [children].'" *M.W.*, 876 N.W.2d at 224 (quoting Iowa Code § 232.116(2)). "While a parent's lower mental functioning by itself is not a sufficient ground for termination," it can be a relevant consideration if it affects the children's well-being. *In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). Thus, our "assessment may include whether 'the parent's ability to provide the needs of the [children] is affected by the parent's mental capacity or mental condition.'" *D.W.*, 791 N.W.2d at 708 (quoting Iowa Code § 232.116(2)(a)).

Here, all three parents

> have diminished capacities, both intellectually and emotionally and lack intellectual capacity for appropriate oversight and care of the children. They have a difficult enough time managing their own needs. Despite the several years of services and their own

deficiencies, these parents are not equipped to safely and appropriately care for their children. They all love their children; however, these children need much more.

Additionally, the "Department, Provider, CASA and Foster Care Review Board are in agreement that additional time will not impact the parents' ability to safely parent; as they lack the capacity to make the necessary changes." "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). The children are doing well in their respective foster homes, and it is clear that any additional time in limbo would not be in their best interests. Considering all relevant factors, we agree with the juvenile court that termination of the parents' parental rights was in the children's best interests.[2]

Because reasonable reunification services were provided to the parents by the State and the Department, the State proved grounds for termination by clear and convincing evidence, and termination of the parents' parental rights at this time is in the children's best interests, we affirm the juvenile court's order terminating the parents' parental rights.

**AFFIRMED ON ALL APPEALS.**

---

[2] Because the parents do not challenge the juvenile court's determination that none of the exceptions in section 232.116(3) apply to preclude termination of their parental rights, we need not discuss that consideration. *See P.L.*, 778 N.W.2d at 40.